UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOTHEBY'S, INC., | ECF CASE |
| *Plaintiff*, | No. 1:21-cv-6574 |
| - against - | **COMPLAINT** |
| FREDERIC THUT, BETTINA VON MARNITZ THUT, and FAAM, LLC. | |
| *Defendants*. | |

Plaintiff Sotheby's, Inc. ("Sotheby's" or "Plaintiff"), by its attorneys Olsoff | Cahill | Cossu LLP, as and for its Complaint against defendants Frederic Thut ("Frederic Thut"), Bettina Von Marnitz Thut ("Von Marnitz Thut"), and FAAM, LLC ("FAAM") (collectively "Defendants"), alleges as follows:

### NATURE OF THE ACTION

1.     Sotheby's brings this action to recover from Defendants the monies Defendants received from the sale of certain property which they consigned to Sotheby's for sale (the "Consigned Lots") under false pretenses. In a brazen fraudulent scheme, Defendant Frederic Thut claims to have purchased a large trove of works, purportedly created by the renowned sculptor Diego Giacometti (the "Artist"), which he then consigned to his own auction house, FAAM, with no disclosure concerning his own ownership interest in the works. The lots were then purchased, upon information and belief, by Frederic Thut's wife, Von Marnitz Thut, who shortly thereafter consigned them to Sotheby's at far higher estimates than for what they had sold at FAAM. Sotheby's has now discovered that the provenance that Defendants provided for these

works was fabricated and the documents provided to support this fabricated provenance were all themselves forgeries.

2.　　Sotheby's only discovered the counterfeit nature of the property because one of its clients, a buyer of some of the Consigned Lots, notified Sotheby's that an independent expert engaged to evaluate the buyer's collection had determined that some of the collection—those pieces consigned by Defendants—were not authentic.

3.　　At the time Defendants consigned the Consigned Lots to Sotheby's they provided Sotheby's with copies of certain documents which Defendants claimed supported the provenance they had provided for the property (the "Provenance Documents").

4.　　Because verification of authenticity of works by the Artist is often difficult, the provenance of a work is often a key component of an authenticity determination.

5.　　After Sotheby's learned from its client that there was doubt concerning the authenticity of the Consigned Lots, it engaged a handwriting expert to evaluate the Provenance Documents in the hopes that the results of the evaluation would convince the expert on the strength of the provenance that the property was authentic.

6.　　The handwriting analysis, however, determined that the Provenance Documents were forgeries.

7.　　Once Sotheby's learned that the Provenance Documents Defendants provided were false, and in conjunction with the negative opinion received from the independent expert, Sotheby's rescinded the sales of certain of the Consigned Lots pursuant to Sotheby's standard Conditions of Sale (the "Conditions of Sale") and Terms of Guarantee (the "Terms of Guarantee"), which were incorporated by reference into the applicable consignment agreements.

8.      Despite Defendants' clear obligations pursuant to numerous agreements with Sotheby's, Defendants refuse to refund the sums that they received in connection with the Consigned Lots.

9.      This action seeks money damages, including payment of all sums due and owing to Sotheby's pursuant, among other things, to the terms of Defendants' contracts with Sotheby's, as well as punitive damages in connection with Defendants' fraudulent conduct.

**PARTIES AND JURISDICTION**

10.     Sotheby's, Inc. is a duly organized New York corporation with its principal place of business located at 1334 York Avenue, New York, New York 10021.

11.     Upon information and belief, Defendant Frederic Thut is a resident of the State of Florida.

12.     Upon information and belief, Defendant Bettina Von Marnitz Thut is a resident of the State of Florida.

13.     Upon information and belief, Defendant FAAM, LLC is a limited liability company organized under the laws of the State of Florida with an address at 350 NW 29th Street, Miami, Florida 33127.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332 due to diversity of the parties and because the amount in controversy exceeds $75,000.00.

15.     Venue is proper in this Court pursuant to 28 U.S.C § 1391 because a substantial part of the events giving rise to the claims occurred in the Southern District of New York.

**FACTS**

**The October 2016 Consignment**

16.     In or about October 2016, Von Marnitz Thut consigned certain items of personal property to Sotheby's for sale at auction in November 2016.

17.     In particular, Von Marnitz Thut consigned the following (the "October 2016 Lots"), which she represented to be as follows:

      a.  Diego Giacometti, *Console à double plateaux, modèle à Grenouilles* ("Lot 306");

      b.  Diego Giacometti, *Table-feuilles: modèle de salle à manger aux Grenouilles* ("Lot 307"); and

      c.  Diego Giacometti, *Lanterne aux feuilles et oiseau* ("Lot 308").

18.     Von Marnitz Thut signed a consignment agreement (the "October 2016 Consignment Agreement") with Sotheby's memorializing the consignment of the October 2016 Lots to Sotheby's for sale at public auction in November 2016.

19.     The October 2016 Consignment Agreement incorporates by reference the Conditions of Sale and Terms of Guarantee.

20.     The October 2016 Consignment Agreement provides, among other things, that Sotheby's is authorized to rescind the sale of any of the October 2016 Lots if Sotheby's learns that any of the October 2016 Lots (1) "is inaccurately described in the catalogue," (2) "is a counterfeit (a modern forgery intended to deceive)," or (3) if Sotheby's determines, in its sole judgment, that the sale of any of the October 2016 Lots may subject it to "any liability."

21.     The October 2016 Consignment Agreement also provides, among other things, that upon rescission of any sale, Von Marnitz Thut is required to return to Sotheby's, on ten days' notice, any sale proceeds paid to her in connection with such sale.

22.     The October 2016 Consignment Agreement also provides, among other things, Von Marnitz Thut's agreement to indemnify Sotheby's in connection with "all claims, actions, damages, losses, liabilities and expenses (including reasonable attorneys' fees) relating to the breach or alleged breach" of any of Von Marnitz Thut's representations or warranties contained in the October 2016 Consignment Agreement.

23.     In the October 2016 Consignment Agreement, Von Marnitz Thut also made representations to Sotheby's that concern the October 2016 Lots, including, among other things, that Von Marnitz Thut has "no reason to believe that any lot of Property is not authentic or is counterfeit."

24.     At the time Defendants consigned the October 2016 Lots, they also provided copies of the Provenance Documents, which Defendants claimed supported the provenance they had provided for the property.

25.     The Provenance Documents included letters from Pierre Matisse, a New York dealer, whose archives are now held at the Morgan Library, Serge Matta, the brother of surrealist Chilean painter Roberto Matta, and a certificate of authenticity by James Lord, writer and associate of the Artist.

26.     Because verification of authenticity of works by the Artist is often difficult, the provenance of a work is often central to making a determination concerning authenticity.

27.     Lot 306 was sold at auction on or about 2016-November-15 for One Hundred Sixty-Two Thousand Five Hundred Dollars ($162,500.00) (the "Lot 306 Sale").

28.     Von Marnitz Thut received One Hundred Twenty-Two Thousand Two Hundred Dollars ($122,200.00) from the Lot 306 Sale proceeds.

29.     Lot 307 was sold at auction on or about 2016-November-15 for Three Hundred Thousand Dollars ($300,000.00) (the "Lot 307 Sale").

30.     Von Marnitz Thut received Two Hundred Twenty-Five Thousand Six Hundred Dollars ($225,600.00) from the Lot 307 Sale proceeds.

31.     Lot 308 was sold at auction on or about 2016-November-15 for Six Hundred Seventy-Two Thousand Five Hundred Dollars ($672,500.00).

32.     Von Marnitz Thut received Three Hundred Sixty-Three Thousand Dollars ($363,000.00) from the Lot 308 Sale proceeds.

**The March 2017 Consignment**

33.     In or about March 2017, Von Marnitz Thut consigned an item of personal property, in particular, an item she represented to be by Diego Giacometti titled *Applique au oiseau à Trois Branches (A Pair)*, to Sotheby's for sale at auction in May 2017 (the "March 2017 Lot").

34.     Von Marnitz Thut signed a consignment agreement (the "March 2017 Consignment Agreement") with Sotheby's memorializing the consignment of the March 2017 Lot to Sotheby's for sale at public auction in May 2017.

35.     The March 2017 Consignment Agreement incorporates by reference the Conditions of Sale and Terms of Guarantee.

36.     The March 2017 Consignment Agreement provides, among other things, that Sotheby's is authorized to rescind the sale of the March 2017 Lot if Sotheby's learns that the March 2017 Lot (1) "is inaccurately described in the catalogue," (2) "is a counterfeit (a modern

forgery intended to deceive)," or (3) if Sotheby's determines, in its sole judgment, that the sale of the March 2017 Lot may subject it to "any liability."

37.     The March 2017 Consignment Agreement also provides, among other things, that upon rescission of any sale, Von Marnitz Thut is required to return to Sotheby's, on ten days' notice, any sale proceeds paid to her in connection with such sale.

38.     The March 2017 Consignment Agreement also provides, among other things, Von Marnitz Thut's agreement to indemnify Sotheby's in connection with "all claims, actions, damages, losses, liabilities and expenses (including reasonable attorneys' fees) relating to the breach or alleged breach" of any of Von Marnitz Thut's representations or warranties contained in the March 2017 Consignment Agreement.

39.     In the March 2017 Consignment Agreement, Von Marnitz Thut also made representations to Sotheby's that concern the March 2017 Lot, including, among other things, that Von Marnitz Thut has "no reason to believe that any lot of Property is not authentic or is counterfeit."

40.     The March 2017 Lot had virtually identical provenance to the provenance provided by Defendants in connection with the October 2016 Lots.

41.     The March 2017 Lot was sold at auction on or about 2017-May-17 for Two Hundred Twenty-Five Thousand Dollars ($225,000.00) (the "March 2017 Lot Sale").

42.     Von Marnitz Thut received One Hundred Sixty-Nine Thousand Two Hundred Dollars ($169,200.00) from the March 2017 Lot proceeds.

**The April 2017 Private Sale**

43.     In or about April 2017, Von Marnitz Thut consigned an item of personal property, in particular, an item she represented to be by Diego Giacometti titled *Hanging Lantern*, to Sotheby's for sale by private sale (the "Private Sale Lot").

44.     The Private Sale Lot had virtually identical provenance to the provenance provided by Defendants in connection with the October 2016 Lots and the March 2017 Lots.

45.     Von Marnitz Thut signed a Private Sale Agreement (the "April 2017 Private Sale Agreement") with Sotheby's memorializing Sotheby's right to act as Von Marnitz Thut's exclusive agent in connection with the offering of the Private Sale Lot for sale.

46.     The April 2017 Private Sale Agreement provides, among other things, that Von Marnitz Thut "will guarantee to the purchaser that the authorship . . . is as set out in . . . the description . . . for a period of four (4) years from the date the Property is sold. . . . In the event we determine that an item . . . is not as stated . . . you authorize us . . . to rescind the sale . . ."

47.     The April 2017 Private Sale Agreement also provides, among other things, that, in the event of rescission, Von Marnitz Thut "will return . . . any sale proceeds . . . and . . . reimburse [Sotheby's] for expenses incurred in connection with the rescinded sale, including reasonable attorney's fees. . . ."

48.     In the April 2017 Private Sale Agreement, Von Marnitz Thut also made representations to Sotheby's that concern the Private Sale Lot, including, among other things, that Von Marnitz Thut has "no reason to believe that the Property is not authentic or is counterfeit."

49.     The Private Sale Lot was sold by private sale for Five Hundred Thirty-Five Thousand Dollars ($535,000.00) (the "Private Lot Sale").

50.     Von Marnitz Thut received Four Hundred Thirty-Five Thousand Four Hundred Seventeen Dollars ($435,417.00) from the Private Lot Sale proceeds.

**The October 2017 Consignment**

51.     In or about October 2017, Von Marnitz Thut consigned an item of personal property, in particular, an item she represented to be by Diego Giacometti titled *La Promenade des Amis*, to Sotheby's for sale at auction in November 2017 (the "October 2017 Lot").

52.     Von Marnitz Thut signed a consignment agreement (the "October 2017 Consignment Agreement") with Sotheby's memorializing the consignment of the October 2017 Lot to Sotheby's for sale at public auction in November 2017.

53.     The October 2017 Consignment Agreement incorporates by reference the Conditions of Sale and Terms of Guarantee.

54.     The October 2017 Consignment Agreement provides, among other things, that Sotheby's is authorized to rescind the sale of the October 2017 Lot if Sotheby's learns that the October 2017 Lot (1) "is inaccurately described in the catalogue," (2) "is a counterfeit (a modern forgery intended to deceive)," or (3) if Sotheby's determines, in its sole judgment, that the sale of the October 2017 Lot may subject it to "any liability."

55.     The October 2017 Consignment Agreement also provides, among other things, that upon rescission of any sale, Von Marnitz Thut is required to return to Sotheby's, on ten days' notice, any sale proceeds paid to her in connection with such sale.

56.     The October 2017 Consignment Agreement also provides, among other things, Von Marnitz Thut's agreement to indemnify Sotheby's in connection with "all claims, actions, damages, losses, liabilities and expenses (including reasonable attorneys' fees) relating to the

breach or alleged breach" of any of Von Marnitz Thut's representations or warranties contained in the October 2017 Consignment Agreement.

57.     In the October 2017 Consignment Agreement, Von Marnitz Thut also made representations to Sotheby's that concern the October 2017 Lot, including, among other things, that Von Marnitz Thut has "no reason to believe that any lot of Property is not authentic or is counterfeit."

58.     The October 2017 Lot had virtually identical provenance to the provenance provided by Defendants in connection with the October 2016 Lots, the March 2017 Lots, and the Private Sale Lot.

59.     The October 2017 Lot was sold at auction on or about 2017-November-15 for Four Hundred Eleven Thousand Dollars ($411,000.00) (the "October 2017 Lot Sale").

60.     Von Marnitz Thut received Three Hundred Ten Thousand Two Hundred Dollars ($310,200.00) from the October 2017 Lot Sale proceeds.

**Property Consigned by Defendants is Determined to Be Inauthentic;**
**Sotheby's Rescinds the Sales of the October 2016 Lots and the Private Sale Lot**

61.     In or around the end of 2018, a buyer of some of the Consigned Lots retained the services of an independent expert who works closely with the Artist's estate, Mr. Denis Vincenot ("Vincenot"), to review the buyer's collection.

62.     Vincenot inspected the buyer's collection, including the October 2016 Lots and the Private Sale Lot, first-hand.

63.     After his review, Vincenot provided a written report in which he concluded that the October 2016 Lots and the Private Sale Lot were inauthentic, which the buyer in turn provided to Sotheby's.

64.    In light of this report, Sotheby's conducted further research concerning the provenance of the Consigned Lots, as well as other lots that came from other consignors with the same provenance as the Consigned Lots.

65.    Sotheby's also engaged with Vincenot in the hopes that it might persuade him to change his mind based on the strength of the Provenance Documents Defendants had provided in connection with the consignments.

66.    Sotheby's also raised the issue of the conclusions of Vincenot's report with the Defendants and requested the original Provenance Documents in Defendants' possession for further examination.

67.    In connection with this examination, Sotheby's also retained the services of one of the foremost handwriting experts in the United States to conduct an analysis of the original Provenance Documents provided by Defendants.

68.    Sotheby's hoped that by demonstrating the authenticity of the Provenance Documents, it might be able to convince Vincenot that his conclusion concerning the October 2016 Lots and the Private Sale Lot was incorrect.

69.    Sotheby's provided the handwriting expert with the original Provenance Documents, as well as documents sourced from the Pierre Matisse archives bearing known writings attributed to Pierre Matisse.

70.    After review of the Provenance Documents, the handwriting expert concluded: (1) the Provenance Documents purportedly written by Pierre Matisse were inconsistent with the samples sourced from the Pierre Matisse archives; (2) the Provenance Documents purportedly written by Pierre Matisse, Serge Matta, and James Lord were all written by the same hand; and (3) the presence of counterfeit protection system coding (introduced to all printers in the 1990s)

on the letterhead used for two Provenance Documents dated 1982 confirms that these Documents were not created in 1982.

71.     Sotheby's had engaged the handwriting expert to convince Vincenot of the authenticity of Defendants' consignments, only to learn that the documents supposedly proving the provenance were themselves forgeries.

72.     Due to the difficulty surrounding authentication of works by the Artist in general, reliance on provenance is often crucial to establishing authenticity.

73.     Because reliance on provenance is so important for establishing authenticity, a determination that the Provenance Documents were fabricated further indicated that the Consigned Lots were not authentic.

74.     Accordingly, and pursuant to the rescission provisions contained in the October 2016 Consignment Agreement and the April 2017 Private Sale Agreement, on 2019-April-16 Sotheby's notified Defendants that it was rescinding the sales of the October 2016 Lots and the Private Sale Lot, demanded that Defendants immediately return the net sale proceeds remitted as required under the applicable consignment agreements, and that it would notify Defendants about rescission of other sales of the Consigned Lots.

75.     On or about 2019-April-30, Sotheby's rescinded the sales and refunded the purchase prices for the October 2016 Lots and the Private Sale Lot to the purchasers of those lots in an amount totaling One Million Six Hundred Seventy Thousand Dollars ($1,670,000.00).

76.     Despite being required to return the proceeds from the rescinded sales to Sotheby's, Defendants failed to return the monies they received.

77.     Sotheby's also engaged Vincenot to inspect additional property consigned by the Defendants, including theMarch 2017 Lot, the October 2017 Lot, and one of the Additional Lots (defined below).

78.     After his review, Vincenot provided a written report in which he concluded that the March 2017 Lot, the October 2017 Lot, and one of the Additional Lots were inauthentic.

**The Additional Lots and Defendants' Fraudulent Scheme**

79.     Several other lots also came to auction to Sotheby's with identical provenance as the Consigned Lots, but through different consignors (the "Additional Lots").

80.     During discussions with Sotheby's about the issues of inauthenticity and rescission, Frederic Thut informed Sotheby's that Defendants had acquired the Consigned Lots and the Additional Lots from a source in France that Defendants refused to disclose.

81.     Upon information and belief, Defendants had acquired the Consigned Lots, put them up for auction through FAAM without disclosing Defendants' ownership interest, and then purchased the Consigned Lots themselves in order to re-consign them to Sotheby's.

82.     During discussions with Sotheby's, Frederic Thut claimed that, in connection with Defendants' re-consignment of the Consigned Lots to Sotheby's, that Defendants were acting as agent for his buyers through FAAM, however, Defendants never provided support for this claim.

83.     Upon information and belief, Defendants had also acquired the Additional Lots and then auctioned them through FAAM without disclosing Defendants' ownership interest in them.

84.     Upon information and belief, Defendants then encouraged the buyers of the Additional Lots to re-consign them to Sotheby's.

85.     Upon information and belief, Defendants encouraged the buyers to re-consign the Additional Lots to Sotheby's in order to avoid potential suspicion through the consignment of too many works to Sotheby's directly.

86.     An Additional Lot was consigned to Sotheby's for sale at auction in May 2016 (the "May 2016 Additional Lot"), an item which was represented to be by Diego Giacometti titled *Lampe aux branche coupe et oiseau (a pair)*.

87.     The May 2016 Additional Lot was sold at auction on or about 2016-May-10 for Four Hundred Sixty-Six Thousand Dollars ($466,000.00).

88.     Two Additional Lots were consigned to Sotheby's for sale at auction in November 2016 (the "November 2016 Additional Lots"), which were represented to be as follows:

>    a.   Diego Giacometti, *Table grecque, modèle carré* ("Additional Lot 309"); and

>    b.   Diego Giacometti, *Lampadaire aux feuilles et oiseaux* ("Additional Lot 311").

89.     Additional Lot 309 was sold at auction on or about 2016-November-15 for One Hundred Seventy-Five Thousand Dollars ($175,000.00).

90.     Additional Lot 311 was sold at auction on or about 2016-November-15 for Five Hundred Eighty-Eight Thousand Five Hundred Dollars ($588,500.00).

91.     Once Sotheby's determined that the Consigned Lots were inauthentic and learned that Frederic Thut was the source of the Additional Lots, Sotheby's began the process of rescinding the sales of the Additional Lots.

**The Letter Agreement**

92.     After Sotheby's rescinded the sales of the October 2016 Lots and the Private Sale Lot, Frederic Thut entered into a letter agreement with Sotheby's, dated 2019-July-10 (the "Letter Agreement") whereby Frederic Thut agreed to return to Sotheby's the net sale proceeds Defendants had received in connection with the sales of the October 2016 Lots and the Private Sale Lot—totaling One Million One Hundred Forty-Six Thousand Two Hundred Sixteen Dollars ($1,147,216.00)—in installments over the following four year period, or to reduce the amount Defendants owed through consignment of other property to Sotheby's.

93.     In November 2020 an item of property was sold at auction for Thirty Thousand Dollars ($30,000.00) which was consigned by Frederic Thut.

94.     In December 2020 another item of property was sold at auction for Forty-Two Thousand Dollars ($42,000.00) which was also consigned by Frederic Thut.

95.     Sotheby's has refunded the full purchase price of the October 2016 Lots and the Private Sale Lot to the purchasers, including the One Million One Hundred Forty-Six Thousand Two Hundred Seventeen Dollars ($1,147,217.00) that Defendants received as well as the commission Sotheby's was entitled to in connection with the sales.

96.     Despite being required to return the proceeds from the rescinded sales to Sotheby's, Defendants refused to return the monies they received or otherwise comply with the terms of the Letter Agreement.

97.     Defendants have failed to provide or identify any credible legal basis for refusing to return the proceeds they received from the sale of the October 2016 Lots and the Private Sale Lot, which were determined to be inauthentic.

98.     Sotheby's has been damaged both by Defendants' refusal to return the sale proceeds and by their breaches of: the October 2016 Consignment Agreement, the March 2017 Consignment Agreement, and the October 2017 Consignment Agreement (together the "Consignment Agreements"); the Private Sale Agreement; and the Letter Agreement.

99.     Sotheby's damages include the amount Defendants received from the sales of the property, Sotheby's commissions in connection with these sales, related costs and expenses, and attorneys' fees.

100.    The Consignment Agreements and the April 2017 Private Sale Agreement require Defendants to pay expenses incurred and attorneys' fees in the event of Defendants' breach and to the extent that Sotheby's is required to take legal action to collect monies owed.

**Rescinding the Sales of the March 2017 Lot and the November 2017 Lot**

101.    Due to the fact that the March 2017 Lot has been determined to be inauthentic, Sotheby's has also begun the process of rescinding the sale of the March 2017 Lot.

102.    Due to the fact that the November 2017 Lot has been determined to be inauthentic, Sotheby's has also begun the process of rescinding the sale of the November 2017 Lot.

**FIRST CLAIM FOR RELIEF**
**(Fraud – against All Defendants)**

103.    Sotheby's repeats and realleges the allegations set forth in Paragraphs 1 through 102 above as though fully set forth herein.

104.    Defendants fraudulently induced Sotheby's into entering into the Consignment Agreements and the April 2017 Private Sale Agreement by knowingly misrepresenting that the Consigned Lots were authentic when in truth, the Consigned Lots were not authentic.

105.    Defendants fraudulently induced Sotheby's into entering into the Consignment Agreements and the April 2017 Private Sale Agreement by, upon information and belief, knowingly misrepresenting the provenance of the Consigned Lots.

106.    Defendants fraudulently induced Sotheby's into entering into consignment agreements with the consignors of the Additional Lots by, upon information and belief, knowingly misrepresenting the provenance of the Additional Lots to those buyers and knowing, or with reasonable prudence should have known, that those buyers would re-consign the Additional Lots to Sotheby's.

107.    Defendants fraudulently induced Sotheby's into entering into the Consignment Agreements and the April 2017 Private Sale Agreement by providing Sotheby's with the Provenance Documents which, upon information and belief, Defendants knew were false.

108.    Defendants fraudulently induced Sotheby's into entering into consignment agreements with the consignors of the Additional Lots by, upon information and belief, providing those buyers with Provenance Documents Defendants knew were false.

109.    Defendants' misrepresentations were material because Sotheby's would not have entered into the Consignment Agreements or the April 2017 Private Sale Agreement if it had known that the Consigned Lots had a false provenance.

110.    Defendants' misrepresentations were material because Sotheby's would not have entered into consignment agreements with the consignors of the Additional Lots if it had known that the Additional Lots had a false provenance.

111.    Sotheby's reliance was reasonable given, among other things, the Provenance Documents and Defendants' representations and warranties in the Consignment Agreements, the April 2017 Private Sale Agreement, the Conditions of Sale, and the Terms of Guarantee.

112.    In reasonable reliance on Defendants' material misrepresentations concerning the provenance of the Consigned Lots, Sotheby's has suffered damages in an amount to be determined at trial, but in no event totaling less than Three Million Five Hundred Thirty-Five Thousand Five Hundred Dollars ($3,535,500.00), and additional related expenses.

113.    Because Defendants engaged in the fraudulent conduct stated in this Complaint willfully and maliciously, and with intent to damage Sotheby's and Sotheby's buyer Sotheby's is also entitled to an award of punitive damages.

**SECOND CLAIM FOR RELIEF**
**(Breach of the Consignment Agreements and April 2017 Private Sale Agreement**
**Against Von Marnitz Thut)**

114.    Sotheby's repeats and realleges the allegations set forth in Paragraphs 1 through 113 above as though fully set forth herein.

115.    Sotheby's and Von Marnitz Thut were parties to the Consignment Agreements and the April 2017 Private Sale Agreement.

116.    Sotheby's and Von Marnitz Thut agreed to all terms of the Consignment Agreements and the April 2017 Private Sale Agreement.

117.    The Consignment Agreements incorporated by refence Sotheby's standard Conditions of Sale and Terms of Guarantee.

118.    Pursuant to the terms of the Consignment Agreements, Sotheby's has the right to the rescind any sale if, *inter alia*, it learns that any of the lots (1) "is inaccurately described in the catalogue," (2) "is a counterfeit (a modern forgery intended to deceive)," or (3) if Sotheby's determines, in its sole judgment, that the sale of any lot may subject it to "any liability."

119.    Pursuant to the terms of the April 2017 Private Sale Agreement, Von Marnitz Thut authorized Sotheby's to rescind the sale in the event Sotheby's determined that the Private Sale Lot was not as set out in the lot description for a period of four years from the date of sale.

120.    Pursuant to the terms of the Consignment Agreements, Von Marnitz Thut agreed to return the proceeds from any sales in the case of rescission and reimburse Sotheby's for expenses incurred in connection with the rescinded sale, including reasonable attorneys' fees.

121.    Pursuant to the terms of the April 2017 Private Sale Agreement, Von Marnitz Thut agreed to return any sale proceeds in the case of rescission and reimburse Sotheby's for expenses incurred in connection with the rescinded sale.

122.    In the Consignment Agreements, Von Marnitz Thut affirmatively represented and warranted that she has "no reason to believe that any lot of Property is not authentic or is counterfeit."

123.    Pursuant to the terms of the Consignment Agreements, Von Marnitz Thut agreed to indemnify Sotheby's in connection with "all claims, actions, damages, losses, liabilities and expenses (including reasonable attorneys' fees) relating to the breach or alleged breach" of any of Von Marnitz Thut's representations or warranties contained in the Consignment Agreements.

124.    Sotheby's has performed all of its obligations under the Consignment Agreements and April 2017 Private Sale Agreement.

125.    Sotheby's has learned that the October 2016 Lots, the March 2017 Lot, the Private Sale Lot, and the November 2017 Lot are not authentic and, as such, were inaccurately described in Sotheby's catalogue.

126.    Sotheby's has also learned that the Provenance Documents provided to Sotheby's by the Defendants in connection with the October 2016 Lots, the March 2017 Lot, the Private Sale Lot, and the November 2017 Lot are false.

127.    Sotheby's invoked its right under the October 2016 Consignment Agreement and the April 2017 Private Sale Agreement to rescind the sales of the October 2016 Lots and the Private Sale Lot and demanded that Defendants return the sale proceeds Von Marnitz Thut received from Sotheby's in connection with these sales.

128.    Von Marnitz Thut has breached the October 2016 Consignment Agreement by (a) refusing to remit the payment due and owing to Sotheby's because of the rescission of the sales of the October 2016 Lots and, upon information and belief, (b) breaching her representations to Sotheby's concerning the property, including the terms provided in Sotheby's Conditions of Sale and Terms of Guarantee.

129.    Von Marnitz Thut has breached the March 2017 Consignment Agreement by (a) refusing to remit the payment due and owing to Sotheby's because of the rescission of the March 2017 Lot and, upon information and belief, (b) breaching her guarantee to Sotheby's concerning the property.

130.    Von Marnitz Thut has breached the April 2017 Private Sale Agreement by (a) refusing to remit the payment due and owing to Sotheby's because of the rescission of the Private Sale Lot and, upon information and belief, (b) breaching her guarantee to Sotheby's concerning the property.

131.    Von Marnitz Thut has breached the November 2017 Consignment Agreement by (a) refusing to remit the payment due and owing to Sotheby's because of the rescission of the

November 2017 Lot and, upon information and belief, (b) breaching her guarantee to Sotheby's concerning the property.

132.   Sotheby's has suffered damages in amount to be determined at trial, but in no event totaling less than One Million One Hundred Thirty-Five Thousand Dollars ($1,135,000.00) and additional related expenses due to Von Marnitz Thut's breach of the October 2016 Consignment Agreement.

133.   Sotheby's has suffered damages in amount to be determined at trial, but in no event totaling less than Two Hundred Twenty-Five Thousand Dollars ($225,000.00) and additional related expenses due to Von Marnitz Thut's breach of the March 2017 Consignment Agreement.

134.   Sotheby's has suffered damages in an amount to be determined at trial, but in no event totaling less than Five Hundred Thirty-Five Thousand Dollars ($535,000.00) and additional related expenses due to Von Marnitz Thut's breach of the April 2017 Private Sale Agreement.

135.   Sotheby's has suffered damages in amount to be determined at trial, but in no event totaling less than Four Hundred Eleven Thousand Dollars ($411,000.00) and additional related expenses due to Von Marnitz Thut's breach of the November 2017 Consignment Agreement.

**THIRD CLAIM FOR RELIEF**
**(Breach of Letter Agreement – against Frederic Thut)**

136.   Sotheby's repeats and realleges the allegations set forth in Paragraphs 1 through 135 above as though fully set forth herein.

137.    Sotheby's and Frederic Thut were parties to the Letter Agreement.

138.   Sotheby's and Frederic Thut agreed to all terms of the Letter Agreement.

139.    The Letter Agreement incorporated by refence Sotheby's standard Conditions of Sale and Terms of Guarantee.

140.    Pursuant to the Letter Agreement, Frederic Thut was required to make installment payments to return the proceeds of the rescinded sales to Sotheby's or consign property to Sotheby's to reduce the amount owed.

141.    Sotheby's has performed all of its obligations under the Letter Agreement.

142.    With the exception of the two lots sold in November and December 2020, Frederic Thut has not made any of the required payments due under the Letter Agreement.

143.    Frederic Thut has breached the Letter Agreement by (a) refusing to remit the payments due and owing to Sotheby's because of the rescission of the sales and, upon information and belief, (b) breaching his representations to Sotheby's concerning the property, including the terms provided in Sotheby's Conditions of Sale and Terms of Guarantee.

144.    Sotheby's has suffered damages in amount to be determined at trial, but in no event totaling less than One Million Seventy-Five Thousand Two Hundred Seventeen Dollars ($1,075,217.00) due to Frederic Thut's breach of the Letter Agreement.

**WHEREFORE**, Sotheby's demands judgment as follows:

a. On its first cause of action, awarding Sotheby's compensatory damages in an amount to be determined at trial, but no less than Three Million Five Hundred Thirty-Five Thousand Five Hundred Dollars ($3,535,500.00), plus interest, as well as punitive damages in an amount to be determined at trial;

b. On its second cause of action, awarding Sotheby's compensatory damages in an amount to be determined at trial, but no less than Two Million Three Hundred Six Thousand Dollars ($2,306,000.00), plus interest;

c. On its third cause of action, awarding Sotheby's compensatory damages in an amount to be determined at trial, but no less than One Million One Hundred Forty-Six Thousand Two Hundred Seventeen Dollars ($1,147,217.00), plus interest;

d. Awarding Sotheby's the costs and disbursements of this action, including attorneys' fees pursuant to the Consignment Agreements and the Private Sale Agreement; and

e. Awarding Sotheby's such other or further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Pursuant to FED. R. CIV. P. 38(b), Sotheby's demands a trial by jury.

Dated: New York, New York
2020-August-03

**OLSOFF | CAHILL | COSSU** LLP

By: _____*s/ Paul S. Cossu*_____
Jonathan Olsoff
Paul S. Cossu
Aimée Scala
3 Water Street
Ellenville, New York 12428
212-719-4400

*Attorneys for Plaintiff Sotheby's, Inc.*